

# SEALED

Office of the United States Attorney
District of Nevada
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
## -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>AARON VIRCHIS and<br><br>MITCHELL GARSHOFSKY,<br><br>Defendants. | Case no.   2:13-mj-093-CWH<br><br>COMPLAINT<br><br>COUNT 1: 18 U.S.C. § 371; 31 U.S.C.<br>§§ 5313 and 5324 |

BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned complainant, being duly sworn, deposes and states:

**COUNT ONE**
(Conspiracy to Cause a Domestic Financial Istitution to Fail to File an Accurate Currency Transaction Report)

1. Beginning in or about July 2012, and continuing up to or about the date of this complaint, in the State and Federal District of Nevada,

**AARON VIRCHIS and MITCHELL GARSHOFSKY,**

defendants herein, did agree and conspire together, for the purpose of evading the reporting requirements of section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, to cause or attempt to cause a domestic financial institution to fail to file an accurate report under section 5313(a) of Title 31 and any regulation prescribed under any such section which constitutes Title 31, United States Code, Sections 5324(a)(1) and (d); Title 31, Code of Federal Regulations, Sections 1010.100, 1021.311 and 1021.313, and thereafter committed an overt act in furterhance of their conspiracy, to wit:  from August 9, 2011 through on or about December 23, 2011, defendant AARON VIRCHIS caused the Palace Station Hotel & Casino to file nine (9) false Currency Transaction Reports.  All in violation of Title 18, United States Code, Section 371.

Complainant, Joshua Bottjer, has been a Special Agent with the United States Treasury Department, Internal Revenue Service - Criminal Investigation ("IRS-CI") since March of 2010. I am presently assigned to the Las Vegas Nevada Field Office.

2. I have a bachelor's degree in finance and masters of taxation degree from Arizona State University. I am a Certified Public Accountant ("CPA") licensed in the State of Arizona. Prior to becoming a Special Agent, I practiced as a CPA specializing in entity and individual income tax return preparation. I maintain my CPA license by participating in continuing education courses.

3. I received 26 weeks of extensive training at the Federal Law Enforcement Training Center in Glynco, Georgia. I studied a variety of law enforcement, criminal investigator, and tax crime issues, including search and seizure, violations of the Internal Revenue laws, and Internal Revenue Service ("IRS") procedures and policies in criminal investigations.

4. Your Affiant has participated in investigations relating to violations of the internal revenue laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the money laundering statutes (Title 18, United States Code, Section 1956, 1957), and related offenses perpetrated against the United States Government. As a Special Agent, I have participated in several IRS-CI search warrants, multi-agency warrants, and multiple-site search warrants. Your Affiant has also authored multiple search warrant affidavits.

## FACTS ESTABLISHING PROBABLE CAUSE

5. The following information contained in this affidavit is based in part on information provided by Special Agents of the IRS-CI, other law enforcement personnel, casino security officials and computer database research. Since this affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that AARON VIRCHIS and MITCHELL GARSHOFSKY are involved in violations of Title 18 and Title 31. It is a violation of Title 31, United States Code, Section 5324 to break up

transactions in an effort to evade the Currency Transaction Reporting-Casino (CTR-C) requirements, and a conspiracy to the same in violation of Title 18, United States Code, Section 371. It is also a violation of Title 31, United States Code, Section 5324 to cause a domestic financial institution to fail to file an accurate CTR-C by providing false information to the financial institution.

6. In 2012, Nevada Gaming Control Board (NGCB) Agents met with IRS-CI Special Agents concerning an on-going investigation. NGCB Agents provided IRS-CI Agents with information concerning a large sports bettor, subsequently identified as AARON VIRCHIS (hereinafter "VIRCHIS"). NGCB Agents advised that VIRCHIS was utilizing multiple SSN and identifications (ID's) when placing bets at local casino sports books. NGCB Agents advised that their investigation revealed that VIRCHIS was one of the largest sports book gambler in the Las Vegas area. NGCB Agents based this information on Book Wagering Reports (BWR's) that were filed by local casinos on VIRCHIS. Casinos are required to file BWR's with the Nevada Gaming Commission on any individual who re-bets $10,000.00 or more in winning race and sports book tickets in any one month. BWR's are a way NGCB tracks individuals betting at casino sports books to identify suspicious gaming activity.

7. Based on this information, IRS-CI intiated an investigation into VIRCHIS. During the investigations, IRS-CI agents verified that VIRCHIS was utilizing several SSN's and passports when providing information to Las Vegas casinos so they could complete Currency Transactions Reports-Casino (CTR-C). Casinos must file CTR-Cs for cash transactions in an amount greater $10,000.00. In order to complete the CTR-C, the individual conducting the financial transaction must provide the casino with personal identifying information, including but not limited to a name, address, and if applicable, a social security number. Record checks did not reveal any known source of employment for VIRCHIS. Information provided from other sources indicates that VIRCHIS primarily spends his time at local casino sports books.

8. Law enforcement has learned during an on-going investigation that on or around

August 4, 2009, AARON VIRCHIS (hereinafter "VIRCHIS") provided a false social security number (SSN) XXX-XX-6799 to Palace Station Hotel & Casino, a domestic financial institution, for the Palace Station to complete a casino currency transaction report ("CTR-C"). Between August 4, 2009 and December 23, 2011, VIRCHIS caused the Palace Station Hotel & Casino to file nine (9) false CTR-C's based on the false SSN provided by VIRCHIS.

9. The investigation into VIRCHIS also revealed that on or around August 20, 2009, VIRCHIS provided another false SSN ending in XXX-XX-6345 to the Bellagio Hotel & Casino, a domestic financial institution to complete a CTR-C. Between August 20, 2009 and February 1, 2010, VIRCHIS caused Bellagio Hotel & Casino to file nine (9) false CTR-C's based on the false SSN provided by VIRCHIS.

10. MITCHELL GARSHOFSKY has been identified as an associate of VIRCHIS.

11. On or around December 2, 2011, AARON VIRCHIS and MITCHELL GARSHOFSKY approached the Cantor Race and Sports Book inside the Venetian Casino, asking for guidance on how to transfer funds between their accounts without having a CTR filed. Sometime later, VIRCHIS with GARSHOFSKY, who were both present, attempted to withdraw $100,000.00. They requested that the withdrawal consist of $40,000.00 cash and $60,000.00 in Race and Sports chips. They further requested that they be able to deposit $60,000.00 in chips, and $20,000.00 cash from VIRCHIS account into GARSHOFSKY's account. Cantor Race and Sports told VIRCHIS that he could not withdraw the chips, at which time GARSHOFSHY stated he watned to transfer chips because he did not want to get "CTR'd," which I believe based on my experience, and the experience of other law enformcent agents, means he did not want a CTR produced for the transaction.

12. Beginning on or around Decmber 2, 2011 and continuing until the present, AARON VIRCHIS and MITCHELL GARSHOFSKY knowingly conspired to structure transfers between their Cantor Gaming accounts. As noted above, law enforcement learned that on or around

4

December 2, 2011, both VIRCHIS and GARSHOFSKY asked Cantor employees how they could transfer funds between their accounts without a CTR-C being filed on them. It is was unclear at this time, what if any information, Cantor gaming provided the targets. However, after their inquiry, VIRCHIS and GARSHOFSKY engaged in a series of chip transfer between their accounts in an apparent effort to evade federal reporting requirements. Below is a summary of those transactions, which were all conducted in chips and therefore did not trigger the CTR-C reporting requirement:

| Date | Deposit/Withdrawal | Account holder and location | Amount |
|---|---|---|---|
| 7/31/12 | Withdrawal from x1804 | VIRCHIS Cantor-Venetian | $200,000.00 |
| 7/31/12 | Deposit into x1832 | GARSHOFSKY Cantor-Venetian | $210,000.00 |
| 9/13/12 | Withdrawal from x1804 | VIRCHIS Cantor-Venetian | $30,000.00 |
| 9/13/12 | Deposit into x1832 | GARSHOFSKY Cantor-Venetian | $30,000.00 |
| 10/2/12 | Withdrawal from x1804 | VIRCHIS Cantor-Venetian | $300,000.00 |
| 10/2/12 | Deposit into x1832 | GARSHOFSKY Cantor-Venetian | $300,000.00 |
| 11/11/12 | Withdrawal from x1804 | VIRCHIS Cantor-Venetian | $75,000.00 |
| 11/11/12 | Deposit into x1832 | GARSHOFSKY Cantor-Venetian | $75,000.00 |
| 11/28/12 | Withdrawal from x2558 | VIRCHIS Cantor-Hard Rock | $78,000.00 |
| 11/28/12 | Deposit into x2015 | GARSHOFSKY Cantor-Hard Rock | $68,000.00 |
| 11/29/12 | Withdrawal from x1804 | VIRCHIS Cantor-Venetian | $160,000.00 |
| 11/29/12 | Deposit into x1832 | GARSHOFSKY Cantor-Venetian | $160,000.00 |
| 12/4/12 | Withdrawal from x1804 | VIRCHIS Cantor-Venetian | $110,000.00 |
| 12/4/12 | Deposit into x1832 | GARSHOFSKY Cantor-Venetian | $110,000.00 |
| 1/30/13 | Withdrawal from x1804 | VIRCHIS Cantor-Venetian | $80,000.00 |
| 1/30/13 | Deposit into x1832 | GARSHOFSKY Cantor-Venetian | $80,000.00 |

13.     As the table listed above demonstrates, VIRCHIS and GARSHOFSKY have made numerous chip transfers into several accounts, including transfers from VIRCHIS Cantor-Venetian

account (ending in x1804), into GARSHOFSKY's Cantor-Venetian account (ending in x1832). Likewise, there has been at least one transfer from VIRCHIS's Cantor-Hard Rock account (ending in x2558) into GARSHOFSKY Cantor-Hard Rock account ending in x2015.

14. VIRCHIS has continued to utilize the chip transfer scheme to evade the filing of CTR-C's. For example, on January 7, 2013, VIRCHIS withdrew $300,000.00 in chips from the Cantor Race and Sports book inside the Venetian using account number ending in x1804. Sometime later that same day VIRCHIS deposited $300,000.00 in chips into his Cantor Race and Sports book account inside the Palms (account number ending in x3888).

15. A review of the FinCen Database, which maintains all CTRs and CTR-Cs, revealed that no CTR-Cs were filed for the aforementioned transactions. This is consistent with the requirements of CTR-Cs, since they must be filed when there is a cash transaction exceeding $10,000.00. The transactions listed in paragraph 12 above were all conducted with chips, and therefore did not trigger the CTR-C reporting requirement.

16. On or about October 2, 2012, GARSHOFSKY and VIRCHIS were overheard speaking by Cantor Gaming officials about how they are customers of BetCRIS. BetCRIS has been identified by Nevada Gaming Officials as an offshore sports betting site.

17. Based on my training and experience I know that BetCRIS is an off shore sports books. Although these sports books are licensed and registered in their respective countries of origin, they cannot legally accept wagers from bettors within the United States of America. In order to circumvent the rules of 18 U.S.C § 1084, off shore sports books use agents and super agents within the United States to recruit bettors and act as intermediaries between the bettors and the off shore book. Bettors are directed to websites to make their wagers. After the wagers win or lose, the agent will settle up with the bettor, usually on a designated day of the week by collecting and paying money owed. The agents then receive a kickback from the off shore book based on a predetermined percentage of the bettors' losses. Based on my and other agents' training and experience, and the

pattern of transfers, I believe that these chip transfers between VIRCHIS and GARSHOFSKY are how they are "settling up" outstanding wagers.

18. In view of VIRCHIS and GARSHOFKY's initial transaction asking for guidance in December of 2011 about how to evade the filing of CTRC's and then ultimately evading eight (8) CTRCs through the transfer of casino chips, I believe that VIRCHIS and GARSHOFSKY are involved in illegal betting.

19. Your affiant further submits that there is probable cause to believe that VIRCHIS is providing false information to casinos, in this case social security numbers, for the completion of CTR-Cs in order to hide his illicit activities.

## CONCLUSION

20. Based on my training and experience, I believe that there is probable cause to believe that AARON VIRCHIS and MITCHELL GARSHOFSKY are violating Title 18, United States Code, Section 371, *Conspiracy,* and Title 31, United States Code, Sections 5324(a)(1) and (d), Title 31, Code of Federal Regulations, Sections 1010.100, 1021.311 and 1021.313, *Causing a Domestic Financial Institution to File a False Currency Transaction Report.*

JOSHUA BOTTJER
Special Agent
Internal Revenue Service –
Criminal Investigations (IRS-CI)

SUBSCRIBED and SWORN to before me
This 6th day of February, 2013

THE HONORABLE CARL W. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

7